UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

STEVEN GREENAWALT,

        Petitioner,

v.                                              Case No. 07-cv-11000
                                              Honorable Thomas L. Ludington

MILLICENT WARREN,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING MOTION TO OBJECT TO RESPONDENT'S ANSWER AS MOOT, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Petitioner Steven Greenawalt, a Michigan prisoner, currently confined at the Thumb Correctional Facility in Lapeer, Michigan, filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is incarcerated in violation of his constitutional rights. In September 2000, Petitioner was convicted by a Wayne County circuit court jury of first-degree premeditated murder, Mich. Comp. Laws § 750.316A, two counts of assault with intent to commit murder, Mich. Comp. Laws § 750.83, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. He was sentenced to life imprisonment for the first-degree-murder conviction, ten to twenty-five years imprisonment for each of the assault convictions, and two-years imprisonment for the felony-firearm conviction. The petition for habeas corpus contends: (1) his confession was involuntary, (2) the trial court violated his right to confrontation when it denied him the opportunity to cross-exam a witness, (3) his counsel was ineffective for various reasons, (4) the prosecutor failed to provide necessary discovery, (5) there was insufficient evidence to convict him, and (6) the trial court violated his right to present a defense because it did not

instruct the jury on the lesser included offense of voluntary manslaughter.

Respondent Millicent Warren asserts that Petitioner's claims are either not cognizable, lack merit, or are procedurally defaulted. On January 12, 2010, Petitioner filed a motion objecting to Respondent's answer. [Dkt. # 12]. For the reasons stated below, the petition for a writ of habeas corpus will be **DENIED** and the motion objecting to Respondent's answer will be **DENIED AS MOOT**.

# I

On March 5, 2000, Andrea Perkins and her friend, Dana Strzalkowski, went to 20145 Exeter in Detroit, Michigan, to buy crack cocaine. Perkins testified at trial that she had never met Petitioner, but saw him in the kitchen when she arrived at the residence that evening. He began to grope her and ask her for sexual favors. Perkins refused. Perkins asked other people at the residence to ask him to stop, but they apparently did not help her. Eventually, Petitioner left the kitchen and went into the living room.

According to Perkins, as she was leaving the house, Petitioner grabbed her arm. Again, she told him to leave her alone. Strzalkowski then told Petitioner to let go of her friend or she was going to "jack [him in the] jaw." Trial Tr. vol. II, p. 149, Sept. 11, 2000. Petitioner became very angry and said "I'll beat you bloody, bitch." Trial Tr. vol. II, p. 149, Sept. 11, 2000. Subsequently, they went outside and Petitioner chased Perkins around the car. Perkins testified that she was terrified because he was coming at her and trying to grab her like he was going to beat her. As she got into the passenger side of her car, Petitioner kicked the passenger window out. Perkins testified that she then moved to the driver's side. Petitioner kicked that window out, too. Strzalkowski told Perkins to just drive away. Petitioner then told Perkins, "I'll shoot you, you bitch." Trial Tr. vol. II, p. 152,

Sept. 11, 2000.  Perkins drove away, leaving Strzalkowski behind.

Approximately three hours later, Perkins, Strzalkowski, and Ruel McPherson, Perkins's boyfriend, returned to the house to give back a pit bull that originally belonged to a neighbor, Johnny Marion.  They returned in a blue van.  Perkins testified that she was still angry that none of the people in the house had helped her during the incident with Petitioner.  Perkins testified that when they arrived at Marion's house, McPherson was lying down in the back of the van.  She said she took the dog out of the van, cut his collar off with a knife, and told Marion that she did not want the dog anymore.

According to Perkins, she then got back into the van.  Shortly thereafter, she observed Petitioner come out of the house with a large gun.  As she drove away, Petitioner fired at the van, striking McPherson.  The medical examiner testified that McPherson died from a shotgun wound to the neck and chest.

Strzalkowski testified that she and Perkins bought cocaine at the Exeter residence on the night McPherson was killed.  Strzalkowski confirmed that Perkins and Petitioner argued, and that when they returned later that night to give back the dog, she saw Petitioner with a gun.  She testified that she heard a shot as they were driving away, and when she turned around, she saw McPherson with blood on his face.

Renidka Green, one of Petitioner's neighbors, testified that she saw him fighting with a white female on the night McPherson was killed.  Green saw Petitioner kick the passenger side window of the car.  She testified that, when the car drove away, she heard Petitioner say, "[G]ive me my keys.  I'm going to get my gun.  I'm going to shoot this b[itch]."  Trial Tr. vol. III, p. 208, Sept. 11, 2000.

Police Officer Joseph Abdella, the officer in charge of the investigation, testified that he was first to arrive at the scene. After talking with several individuals at the scene and learning that Petitioner was the person involved, he conducted a search of Petitioner's home and discovered a shotgun under a mattress. He testified that five rounds were in the chamber, a spent casing was found outside the house, and a live round was next to it.

Officer Abdella testified that Petitioner was then taken to the station, where he was given a *Miranda* warning. Petitioner signed a statement making clear he had received the warning, and that he understood he was entitled to remain silent and request the presence of an attorney at questioning. Petitioner then stated to officer Abdella that when he heard Perkins was back at the Exeter residence, he picked up his gun, loaded it, pointed it toward the van, and shot. Officer Abdella testified that Petitioner told him the following:

> Me, Hollywood, OC, and Jimmy just got back from the bar. We parked in my driveway. I saw a bunch of guys hanging out in the house across the street. It was like a little gathering of people, maybe like 10 or 12. They called us over, so we walked across the street and was hanging out having a beer and smoked a joint. Then those girls came over. I don't remember what was said or what happened. The next thing I know one of the girls is spitting on me and slapping me. They said I pushed her or something and she ran to her car. She locked herself in the car and I kicked out the driver's side window first. Then she scooted over to the passenger side and I ran around the car and kicked in that window. Then she started driving and tried to run me over. She was going back and forth, up and down the street and she kept trying to run me over. I had to jump out of the way a couple of times. Then they just drove off. I went in the house. I thought she was gone. I didn't think they were coming back. A little while later, it was quick, people started telling me they were back. That's when I grabbed the gun from behind the front door and walked outside with it. That's when I saw the mini van. I don't know who was in the van, but everybody told me it was the same girls. The van started pulling down the street south, and I fired one shot with a 12 gauge. That was it. I went back in the house.

Trial Tr. vol. IV, p. 17–18, Sept. 12, 2000.

Petitioner did not testify. After a three-day trial, the jury found Petitioner guilty of first

degree murder, two counts of assault with intent to commit murder, and possession of a firearm during commission of a felony. Following his sentencing, Petitioner, through counsel, filed his claim of appeal with the Michigan Court of Appeals. The appeal challenged the admission of Petitioner's statement to Officer Abdella, contending his earlier request for an attorney was ignored; objected to the trial judge's allegedly offensive conduct during voir dire; challenged the sufficiency of the evidence; appealed the trial judge's denial of Petitioner's motion for a directed verdict; challenged the trial judge's refusal to instruct the jury on lesser included offenses of manslaughter and reckless discharge of a firearm; challenged the prosecutor's allegedly prejudicial statements during closing arguments; raised a confrontation clause issue, contending the trial judge improperly limited Petitioner's cross-examination of witnesses; and raised a general challenge to having received a fair trial based on the cumulative effect of all the alleged errors. *See People v. Greeawalt*, No. 231227, 2003 WL 21079857 (Mich. Ct. App. May 13, 2003); *see also* Pet. at 3–4; [Dkt. # 1]. Petitioner raised two additional claims, acting pro se, in supplemental briefs to his initial appeal. *Greenwalt*, 2003 WL 21079857, at *5. The supplemental briefs challenged the sufficiency of Petitioner's counsel and requested an evidentiary hearing, pursuant to *People v. Ginther*, 390 Mich. 436 (1973), to establish the alleged inadequacy of his attorney. Pet. at 5–6.

On August 12, 2002, the Michigan Court of Appeals issued an order denying Petitioner's motion to remand the case for a *Ginther* hearing. On May 13, 2003, the Court of Appeals issued an unpublished per curiam opinion affirming Petitioner's convictions and sentences. *People v. Greenawalt*, No. 231227, 2003 WL 21079857 (Mich. Ct. App. May 13, 2003). Petitioner then filed an application for leave to appeal that decision with the Michigan Supreme Court, raising the same claims as he raised in the Court of Appeals, which was denied on October 31, 2003. *People v.*

*Greenawalt*, 469 Mich. 952 (2003) (Table).

In October 2004, Petitioner filed a motion for relief from judgment with the Wayne County Circuit Court, contending he was entitled to a new trial based on alleged prosecutorial misconduct and ineffective assistance of his own counsel. On February 9, 2005, the court denied Petitioner's motion for relief from judgment. *People v. Greenawalt*, No. 00-3673-01 (Wayne County Cir. Ct., Feb. 9, 2005).

Petitioner filed a delayed application for leave to appeal that decision with the Michigan Court of Appeals, which was denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Greenawalt*, No. 267177 (Mich.Ct.App. June 22, 2006). His application for leave to appeal that decision was also denied by the Michigan Supreme Court "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Greenawalt*, 477 Mich. 972 (2006).

Subsequently, on March 8, 2007, Petitioner filed this habeas petition, again challenging the admission of his statement to Officer Abdella on the grounds that it was obtained after he asked for an attorney; contending he did not receive a fair trial because the judge limited his ability to confront the witnesses against him; contending he was "constructively denied" effective assistance of counsel because his attorney did not adequately investigate the case, hire an expert, conduct discovery, interview material witnesses, or conduct "crucial testing"; raising a due process challenge based on the prosecutors alleged failure to disclose *Brady*[1] materials; challenging the sufficiency of the evidence for a first-degree murder conviction; and challenging the adequacy of the jury instructions due to the trial judge's refusal to include instructions on the lesser included offense of manslaughter.

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

## II

Petitioner's claims are reviewed pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (AEDPA). This AEDPA "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). The statute applies to all habeas petitions filed after the effective date of the Act, April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Because Petitioner's application was filed after that date, the provisions of the AEDPA, including the amended standard of review, apply to this case.

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, "[t]he state court's application [of federal law] 'must have been objectively unreasonable.' " *Wiggins*, 539 U.S. at 521 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000)). Additionally, this Court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ

of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000) ("All factual findings by the state court are accepted by this Court unless they are clearly erroneous.") (citing *Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir.1995)).

A state court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in" U.S. Supreme Court cases or "confronts a set of facts that are materially indistinguishable from a decision of [the U.S. Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams*, 529 U.S. at 405-06. Moreover, a state court's application of clearly established federal law is not "objectively unreasonable" merely because it is "incorrect." *Id.* at 409–10. "Under § 2254(d) (1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 409–11; *see also Dorchy v. Jones*, 398 F.3d 783, 787–88 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

## III

### A

In his first habeas claim, Petitioner contends that the trial court erred in refusing to suppress his confession because it was obtained after he invoked his right to counsel.

As an initial matter, to the extent that Petitioner alleges a violation of the Michigan Constitution or Michigan law, such claims are not cognizable upon federal habeas review. *Estelle*

*v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). A federal habeas court may only grant habeas relief to a petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); 28 U.S.C. § 2254(a). Therefore, habeas relief may not be based upon a perceived error of state law. *Gilmore v Taylor*, 508 U.S. 333 (1993) (citing *Estelle*, 502 U.S. at 67).

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions. *See Colorado v. Connelly*, 479 U.S. 157, 163–64 (1986). A confession is considered involuntary if: (1) the police "extorted" the confession by means of "coercive activity"; (2) the " 'coercion' in question was sufficient to overbear the will of the accused"; and (3) the will of the accused was in fact overborne "*because* of the coercive police activity in question." *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988) (citations omitted). In determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton*, 474 U.S. 104, 112 (1985).

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court held that statements made during a custodial interrogation of a suspect are inadmissible at trial unless the defendant has voluntarily and knowingly waived certain rights prior to making those statements. *Id.* at 444. A defendant's waiver of his *Miranda* rights must be found, based upon the totality of the circumstances, to be voluntary, knowing, and intelligent. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Whether a defendant understood his *Miranda* rights is a question of fact. On federal habeas review, a district court must presume that the state court's factual findings were correct unless the petitioner shows otherwise by clear and convincing evidence. *See Valdez v. Ward*, 219 F.3d 1222,

1231 (10th Cir. 2000); *see also Henderson v. DeTella*, 97 F.3d 942, 946 (7th Cir. 1996).

The state-court determination that Petitioner's confession was voluntary was not contrary to, or an unreasonable application of, clearly established federal law, and thus does not warrant federal habeas relief. See *Payne v. Smith*, 207 F.Supp.2d 627, 646 (E.D. Mich. 2002).

Before trial, the trial court held a *Walker* hearing on Petitioner's motion to suppress the statement that he gave to police. The trial court, after hearing testimony at the hearing from Officer Abdella and Petitioner, and considering the totality of the circumstances, determined that Petitioner's statements were voluntary, that Petitioner did not request an attorney, and that Petitioner's constitutional rights were not violated. The trial court found that Petitioner's request for an attorney was equivocal; "[t]here seems not to have been a definitive statement where he did, in fact, request an attorney." *Walker* Hr'g Tr. 27, May 5, 2000. The credibility of witnesses and whether the police engaged in coercive activity are factual issues to which the § 2254(e) presumption of correctness is applied. See *Miller*, 474 U.S. at 112. Petitioner has not rebutted the state court's factual findings with clear and convincing evidence.

Because Petitioner has not presented clear and convincing evidence to rebut this presumption, he is not entitled to challenge the trial court's credibility determination concerning the voluntariness of his confession on habeas review. *See Walendzinski v. Renico*, 354 F.Supp.2d 752, 760 (E.D. Mich. 2005). Petitioner is simply reiterating his disagreement with the state-court determination, and that alone does not overcome the presumption that the state-court decision was correct. Therefore, Petitioner is not entitled to habeas relief regarding this claim.[2]

_____

[2] The trial court's determination of this issue was also affirmed by the Michigan Court of Appeals on direct review. *Greenawalt*, 2003 WL 21079857, at *1.

**B**

Petitioner next alleges that his right to confrontation was violated when the trial court limited defense counsel's cross-examination of a police officer.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The right to confront witnesses includes the right of cross-examination, *Douglas v. Alabama*, 380 U.S. 415, 418 (1965), and "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 316–17 (1974); *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 51–52 (1987) ("[T]he right to cross-examine includes the opportunity to show that a witness is biased, or that the testimony is exaggerated or unbelievable.").

The Confrontation Clause, however, guarantees only "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Thus, the Confrontation Clause is violated only if "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had . . . counsel been permitted to pursue his proposed line of cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986). Because a state trial court possesses considerable discretion in limiting the extent of cross-examination, "the inquiry for the reviewing court is 'whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory.' " *Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir.2006) (quoting *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir.1989)).

Petitioner raised this claim on direct appeal but the Michigan Court of Appeals rejected it,

stating:

> If a defendant has been limited in his ability to cross-examine the witnesses against him, his constitutional right to confront witnesses may have been violated. *People v. Cunningham*, 215 Mich. App 652 . . . (1996). Yet, there are limits to this right to confront witnesses. The Confrontation Clause " 'guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " *People v. Bushard*, 444 Mich. 384, 391 . . . (1993) (BOYLE, J.), quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 . . . (1985). Rather, the Confrontation Clause protects the defendant's right for a reasonable opportunity to test the truthfulness of a witness'[s] testimony. *People v. Adamski*, 198 Mich.App 133, 138 . . . (1993). [Additional citation omitted].

> At trial, defendant attempted to ask the officer in charge about a prior statement characterizing the shooting as accidental. The trial court disallowed the questioning because it sought improper opinion testimony.

> Witnesses, even expert witnesses, are not allowed to opine or interpret the facts where the opinion invades the province of the jury or includes matters within the common knowledge of the jurors. *Carson Fischer Potts & Hyman v. Hyman*, 220 Mich. App 116, 123 . . . (1996); *People v. Drossart*, 99 Mich. App 66, 79–80 . . . (1980). A witness therefore cannot opine on the criminal responsibility of the accused, particularly if that witness is not an expert. *Drossart, supra.* Because the challenged line of questioning pertained to the officer's opinion about defendant's guilt, not the officer's personal knowledge, the trial court did not err in refusing to allow the questioning. Furthermore, because the trial court's ruling was a reasonable limitation on the cross-examination of this witness, defendant's right to confront the witness was not violated. [Citation omitted].

*Greenawalt*, 2003 WL 21079857, at *4–5.

The Michigan Court of Appeals correctly determined that the limitation placed on Petitioner's cross-examination of the officer by the trial court was supported by law. Whether the shooting was an accident was a question of fact properly determined by the jury. Prohibiting the officer from testifying as to his opinion of the shooting was not contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. Petitioner is not entitled to habeas relief on this claim.

## C

Petitioner next asserts that he was prejudiced by ineffective assistance of counsel. Specifically, he claims that defense counsel was ineffective because

> ( 1) he failed to investigate matters mitigating to the case in order to prepare a defense; (2) he failed to hire an expert; (3) he failed to conduct proper discovery to ensure review of the prosecution's file; (4) he failed to interview witnesses material to the defense; [and] (5) he completely failed to subject the adversarial party to the crucial testing, denying the Petitioner a fair trial.

Pet. Table of Contents.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test to determine whether a criminal defendant has received ineffective assistance of counsel. First, the convicted person must prove that counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Second, the convicted person must show that counsel's deficient performance prejudiced him. *Id.* Prejudice is established by a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.* The Supreme Court emphasized that, when assessing counsel's performance, the reviewing court should afford counsel a great deal of deference.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent to making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689 (internal citations and quotations omitted).

The Supreme Court explained that to establish deficient performance, a habeas petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The Sixth Circuit, applying the *Strickland* standard, has held that a reviewing court therefore must focus on whether counsel's alleged errors "have undermined the reliability of and confidence in the result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996).

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *Malcum v. Burt*, 276 F. Supp. 2d 664, 685 (E.D. Mich. 2003). For example, a petitioner cannot establish that counsel was ineffective based upon "vague and conclusory allegations that some unspecified and speculative testimony might have established his defense." See *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991).

With the exception of the third claim, regarding the need for proper discovery, Petitioner raised his other ineffective- assistance-of-counsel claims on direct appeal. The Michigan Court of Appeals rejected them, stating:

> In a *pro se* supplemental brief, defendant argues that trial counsel was ineffective. Because defendant did not raise this issue in an appropriate motion in the trial court, our review of this issue is limited to errors apparent on the record. *People v. Rodriguez*, 251 Mich. App 10, 38 . . . (2002); *People v. Snider*, 239 Mich. App 393, 423 . . . (2000).
>
> To establish ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that

the representation so prejudiced the defendant that he was denied a fair trial. *People v. Pickens*, 446 Mich. 298, 338 . . . (1994). The defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *People v. Carbin*, 463 Mich. 590, 600 . . . (2001). To establish prejudice, the defendant must show that there was a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id.*

Defendant first argues that his attorney was ineffective for failing to call a firearms expert as a witness. Whether to call an expert witness involves a matter of trial strategy. *People v. Cooper*, 236 Mich. App 643, 658 . . . (1999). Defendant asserts that he advanced his attorney $5,000 for the purpose of hiring an expert and conducting an investigation. However, there is no indication in the record that defense counsel failed to consult with experts or investigate this matter, or that his decision not to call an expert was unsound trial strategy. This Court will not substitute its judgment for that of trial counsel in matters of trial strategy. *People v. Duff*, 165 Mich. App 530, 545–46 . . . (1987). Furthermore, defendant has not established that failure to call a firearms expert prejudiced his defense. *Pickens*, *supra*.

Defendant also argues that his attorney was deficient for failing to present an intoxication defense. A defendant is entitled to have his counsel prepare, investigate and present all substantial defenses. Where there is a claim that counsel was ineffective for failing to raise a defense, the defendant must show that he made a good-faith effort to avail himself of the right to present a particular defense and that the defense of which he was deprived was substantial. A substantial defense is defined as one that might have made a difference in the trial's outcome. *People v. Kelly*, 186 Mich. App 524, 526 . . . (1990). The decision whether to pursue an intoxication defense is a matter of trial strategy, which this Court will not second-guess. *People v. Henry*, 239 Mich. App 140, 148 . . . (1999).

An intoxication defense is available only if the facts would allow the jury to find that the defendant's intoxication was so great as to render him unable to form the requisite intent. *People v. Gomez*, 229 Mich. App 329, 332 . . . (1998).

Here, a review of the available record reveals that an intoxication defense would not have been successful. Specifically, the circumstances surrounding the shooting did not suggest that defendant was incapable of forming the requisite intent for first-degree murder. Defendant has not shown that counsel was ineffective for not pursuing an intoxication defense. Furthermore, contrary to what defendant argues, counsel's alleged trial notes do not demonstrate that he was unprepared for trial.

We also reject defendant's claim that counsel was ineffective for failing to bring to the trial court's attention that some jurors appeared to be sleeping at trial.

> According to defendant, his attorney was aware that jurors were sleeping, but apparently chose not to pursue the issue as a matter of strategy. Because the record does not indicate whether jurors were actually sleeping, whether counsel was aware of the situation, or what counsel's reasons may have been for deciding not to pursue the issue at trial, defendant has not sustained his burden of showing that counsel was ineffective.

*Greenawalt*, 2003 WL 21079857, at *5–6.

Petitioner has not demonstrated that the Michigan Court of Appeals' decision was contrary to clearly established federal law or objectively unreasonable. Rather, an examination of the record reveals that counsel did a competent job. Moreover, even if counsel's performance fell "outside the wide range of professionally competent assistance[,]" Petitioner cannot establish the requisite prejudice *Strickland* requires. *Strickland*, 466 U.S. at 690–94. Petitioner is not entitled to habeas relief regarding his previously-exhausted ineffective assistance of counsel claims.

Petitioner's remaining ineffective assistance claim—that his counsel did not conduct proper discovery to ensure review of the prosecutor's file—is procedurally defaulted. Petitioner raised this claim for the first time in his motion for relief from judgment in October 2004. The Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal the denial of his motion for failure to establish grounds for relief pursuant to Mich.Ct.R. 6.508(D). *People v. Greenawalt*, No. 267177 (Mich. Ct. App. June 22, 2006). Likewise, the Michigan Supreme Court denied his application for leave to appeal because he failed to meet his burden of establishing entitlement to relief under Mich. Ct. R. 6.508(D). *People v. Greenawalt*, 477 Mich. 972 (2006).

For a claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule and the state court must have also based its decision on the procedural default. *Simpson v. Jones*, 238 F.3d 399 (6th Cir. 2000). If a state prisoner defaults his federal claims in state court in a decision based on an independent and adequate state procedural

rule, those claims cannot be reviewed in a habeas proceeding.  *Coe v. Bell*, 161 F.3d 320 (6th Cir. 1998).  In order for the procedural default doctrine to apply, the last state court rendering a judgment in the case must have based its judgment on the procedural default.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

Here, the Michigan Court of Appeals and the Michigan Supreme Court, the last state courts rendering judgments in the case, based their decisions to deny Petitioner's applications for leave to appeal the trial court's denial of his motion for relief from judgment on his failure to comply with Mich. Ct. R. 6.508(D).  While the judgments were brief, they were based on an independent and adequate state procedural rule; Petitioner's claim was procedurally defaulted because he did not raise it in his appeal of right.  Since the Michigan Court of Appeals and the Michigan Supreme Court were the last state courts rendering judgments in this case, their decisions denying Petitioner's claims on the basis of a state procedural bar also prevent federal habeas review.  *Simpson*, 238 F.3d at 407.

A federal habeas petitioner who fails to comply with a state's procedural rules waives his right to federal habeas review absent a showing of "cause for noncompliance and some showing of actual prejudice resulting from the alleged constitutional violation" or some showing a fundamental miscarriage of justice.  *Gravely v. Mills*, 87 F.3d 779 (6th Cir. 1996).

To the extent that Petitioner attempts to establish cause to excuse his procedural default by claiming that his appellate counsel was ineffective for failing to raise his claims in his direct appeal, he does not do so.  Attorney error will not constitute adequate cause to excuse a procedural default unless it amounts to constitutionally ineffective assistance of counsel under the criteria established in *Strickland*.

The mere failure to raise a claim, even if it is meritorious, does not constitute ineffective assistance of appellate counsel sufficient to excuse a procedural default. *Rust v. Zent*, 17 F.3d 155 (6th Cir. 1994); *see also McMeans v. Brigano*, 228 F.3d 674 (6th Cir. 2000) (where claim was not "dead bang winner," the petitioner's appellate counsel's failure to raise it on direct appeal did not constitute cause to excuse procedural default).

In this case, the record reveals that various issues were raised in Petitioner's direct appeal but that his convictions were affirmed. Petitioner fails to demonstrate that the issues that were allegedly ignored by his appellate counsel on direct appeal were clearly stronger than those that were presented, and he has failed to overcome the strong presumption that his counsel was competent. Since he has not established cause for his procedural default, there is no need to determine whether he can meet the prejudice prong of the "cause and prejudice" test. *Smith v. Murray*, 477 U.S. 527 (1986); *Long v. McKeen*, 722 F.2d 286 (6th Cir. 1983). Petitioner is not entitled to habeas relief on his third claim of error regarding his ineffective assistance of counsel claim.

## D

Petitioner next alleges that the prosecutor committed misconduct under *Brady v. Maryland*, 373 U.S. 83 (1963), by not showing the jury photographs of the crime scene. He claims the photographs would have demonstrated that the killing was an accident and ultimately changed the outcome of the trial. The claim is procedurally defaulted because it was not raised on direct appeal and was later held to be procedurally defaulted by the state trial court on collateral appeal. *See* III C. Moreover, the claim is without substantive merit.

In *Jamison v. Collins*, 291 F.3d 380, 384–85 (6th Cir. 2002), the Sixth Circuit Court of Appeals set forth the elements that must be established to show a *Brady* violation:

[*Brady*] and its progeny held that due process is violated when the prosecution suppresses evidence favorable to the accused in a criminal case if the evidence is material to guilt or to sentencing. *Id.* at 87. This duty extends to information in the possession of the law enforcement agency investigating the offense. *Kyles v. Whitley*, 514 US 419 . . . (1995).

A *Brady* violation consists of three elements, as recently set forth by *Strickler v. Greene*, 527 U.S. 263 . . . (1999). [Petitioner] must establish (1) that the evidence was favorable to him, (2) that it was suppressed (whether intentionally or not) by the government, and (3) that prejudice ensued. *Id.* at 281–82. The prejudice (or materiality) element of a *Brady* violation is established if there is a reasonable probability of a different outcome of the trial had the *Brady* material been available. *Ibid.*

The burden is on a habeas petitioner to prove that evidence that is required to be disclosed to him under *Brady* was not disclosed to him. *Coe*, 161 F.3d at 344. The failure to turn over inculpatory evidence does not violate *Brady*. *United States v. Henry*, 71 Fed. App'x 493, 502 (6th Cir. 2003). *Brady* generally does not apply to the delayed disclosure of exculpatory information, but only to a complete failure by the prosecutor to disclose such information. *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002) (internal citations omitted). If previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs unless the defendant is prejudiced by its non-disclosure. *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986); *see also United States v. Bencs*, 28 F.3d 555, 560–61 (6th Cir. 1994).

In this case, Petitioner asserts that a stack of photographs, which he allegedly saw on the prosecutor's table during trial, would have demonstrated that the shot ricocheted. The trial court, in addition to finding that Petitioner failed to raise this issue in his direct appeal, found that he failed to show that he actually saw such photographs. The trial court thus denied his post conviction motion.

Petitioner has not demonstrated that the photographs that were allegedly suppressed were

exculpatory evidence or that he was prejudiced by the prosecutor's alleged failure to provide him with the photographs. Petitioner also cannot establish any deficient performance by his attorney in obtaining the alleged photographs or any resulting prejudice from any deficient performance under *Strickland*. Petitioner is not entitled to habeas relief on his fourth habeas claim.

<p style="text-align:center"><strong>E</strong></p>

Petitioner next alleges that there was insufficient evidence to support his conviction for first-degree murder.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). After *Winship*, the critical question on review of the sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16.

In Michigan, "[t]he elements of first-degree murder are that the defendant killed the victim and that the killing was either 'willful, deliberate, and premeditated' [Mich. Comp. Laws] § 750.316(1)(a), or committed in the course of an enumerated felony, such as larceny, [Mich. Comp. Laws] § 750.316(1)(b)." *People v. Bowman*, 254 Mich. App. 142, 151 (2002). Premeditation may be established through evidence of: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v. Schollaert*, 194 Mich. App. 158 (1992).

Petitioner raised this claim in his direct appeal but the Michigan Court of Appeals rejected it, stating:

> Defendant next argues that the evidence was insufficient to support his conviction for first-degree murder and that the trial court should have granted his motion for a directed verdict. We find no merit to defendant's claims.

> An appellate court's review of the sufficiency of the evidence to sustain a conviction should not turn on whether there was any evidence to support the conviction, but whether there was sufficient evidence to justify a rational trier of fact in finding the defendant guilty beyond a reasonable doubt. *People v. Wolfe*, 440 Mich. 508, 513–14 . . . (1992), amended on other grounds 441 Mich. 1201 (1992). The evidence must be reviewed in a light most favorable to the prosecution. *Id.* at 515.

> In order to convict a defendant of first-degree murder, the prosecution is required to prove that the defendant intentionally killed the victim and that the killing was premeditated and deliberated. *People v. Anderson*, 209 Mich. App 527, 537 (1995). "Premeditation and deliberation require sufficient time to allow the defendant to take a second look." *Id.* This Court has explained:

>> The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. Premeditation may be established through evidence of the following factors: (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide. [*Anderson*, *supra* (citations omitted).]

> Generally, where a killing results from a fight, there must be evidence of a "thought process undisturbed by hot blood" in order to prove first-degree murder. *People v. Plummer*, 229 Mich. App 293, 301 . . . (1998). Circumstantial evidence and reasonable inferences drawn from the evidence may be sufficient to prove the elements of the crime. *People v. Abraham*, 234 Mich. App 640, 656; . . . (1999).

> Here, the evidence presented by the prosecution, viewed most favorably to it, was sufficient to enable the jury to find beyond a reasonable doubt that defendant shot at the van with a premeditated and deliberated intent to kill the occupants. During an earlier confrontation with the women, defendant threatened to shoot them. When the women returned a few hours later, defendant retrieved his gun and proceeded to follow through on his earlier threat, even though the van was driving away and did not pose a threat to defendant at that time. Defendant subsequently hid the shotgun under a mattress to avoid arrest. Defendant's argument concerning the

sufficiency of evidence fails. Further, because the evidence was sufficient to support a conviction of first-degree murder, the trial court did not err in denying defendant's motion for a directed verdict. *People v. Aldrich*, 246 Mich. App 101, 122 (2001). Furthermore, we find no merit to defendant's claim that the court applied an incorrect legal standard in deciding defendant's motion.

*Greenawalt*, 2003 WL 21079857, at *2–3.

In this case there was evidence that Petitioner threatened to shoot the women during an earlier confrontation. When the women returned, Petitioner retrieved his gun and proceeded to follow through on his threat, despite the fact that the van was driving away and did not pose a threat to him at that time. Additionally, Petitioner hid the gun under a mattress in order to avoid arrest. The trial court did not err in denying his motion for a directed verdict.

Even if the Court were to conclude that Petitioner's convictions were not supported by sufficient evidence, "the question would remain whether the [Michigan] Court of Appeals was unreasonable in concluding otherwise." *Saxton v. Sheets*, 547 F.3d 597, 607 (6th Cir. 2008). Given the strength of the evidence against Petitioner and the deference owed to the jury's resolution of conflicting inferences, the state appellate court's conclusion, that the evidence was sufficient to support Petitioner's first-degree-murder conviction, was objectively reasonable and neither contrary to, nor an unreasonable application of, clearly established federal law. Petitioner is therefore not entitled to habeas relief on his insufficient evidence claim.

**F**

Petitioner's final habeas claims allege that the trial court erred in denying his request for instructions on manslaughter and reckless discharge of a firearm. He further alleges that the Michigan Supreme Court denied him due process and equal protection of the law, apparently because the state high court upheld the trial court decision. Respondent asserts that the claims are

procedurally defaulted because they were not properly raised in state court proceedings. However, Petitioner clearly raised the issue on direct appeal, and properly cited both the Due Process Clause and the Equal Protection Clause as possible authority for his claim. *See Greenawalt*, 2003 WL 21079857, at *3; Mot. for Reconsideration, Nov. 17, 2003. Accordingly, the final habeas claim is not procedurally defaulted. *Picard v. Connor*, 404 U.S. 270, 271–78 (1971).

Nevertheless, Petitioner's claim that the trial court erred in refusing to give certain jury instructions is without merit and will be denied. The Michigan Court of Appeals rejected the claim on direct appeal, stating:

> Defendant next argues that the trial court erred in refusing to instruct the jury on the lesser offenses of voluntary manslaughter and careless, reckless or negligent discharge of a firearm, resulting in death. We disagree.
>
> Both of these offenses are cognate lesser included offenses to first-degree murder. *People v. Bearss*, 463 Mich. 623, 627 . . . (2001); *People v. Cheeks*, 216 Mich.App 470, 479 . . . (1996). Recently, in *People v Cornell*, 466 Mich. 335, 353–59 . . . (2002), our Supreme Court held that [Mich. Comp. Laws] § 768.32 does not permit instruction on cognate lesser offenses. See also *People v. Alter*, [255 Mich. App. 194] (2003). Because these instructional matters were preserved at trial and this case was pending on appeal when *Cornell* was decided, the decision in *Cornell* applies to this case. *See Cornell*, *supra* at 367. Accordingly, the trial court did nor err in refusing to instruct the jury on either voluntary manslaughter or careless, reckless or negligent discharge of a firearm.
>
> Furthermore, because defendant did not request instructions on involuntary manslaughter or manslaughter resulting from a weapon intentionally pointed, but without malice, the court did not err in failing to instruct on those offenses.

*Greenawalt*, 2003 WL 21079857, at *3.

Petitioner alleges that the trial court's failure to give the requested instructions violated Michigan law.[3] Only federal constitutional issues are reviewable in a federal habeas proceeding.

---

[3]Petitioner contends, accurately, that *Cornell* was overruled in part by *People v. Mendoza*, 468 Mich. 527, 533 (2003), one month after his conviction was affirmed on direct

*Nickerson v. Lee*, 971 F.2d 1125, 1137 (4th Cir. 1992). State courts have the final say in matters of state law, and a federal habeas court may not intervene in order to correct a perceived violation of state law.

Petitioner has not demonstrated a violation of federal law. A defendant generally "is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988) (citing *Stevenson v. United States*, 162 U.S. 313 (1896).). *Mathews* is not controlling, however, if there is no basis on which to overcome the state court's factual findings that there was insufficient evidence to support the defendant's theory. *Mitzel v. Tate*, 267 F.3d 524, 537 (6th Cir. 2001). In light of the evidence in this case, the trial court's refusal to instruct the jury on the offenses of voluntary manslaughter or reckless discharge of a firearm is not constitutional error.

Although the United States Supreme Court has held that it is a violation of due process for a court to fail to instruct on a lesser included offense supported by the evidence in a capital case, *see Beck v. Alabama*, 447 U.S. 625, 627 (1980), it has not so held in noncapital cases. To the contrary, the Sixth Circuit has held that failure to instruct on a lesser included offense in a noncapital case is

───────────────

appeal. In *Mendoza*, the Michigan Supreme Court held that "when a defendant is charged with murder, an instruction for voluntary and involuntary manslaughter must be given *if supported by a rational view of the evidence*." 468 Mich. at 541 (emphasis added). Here, Petitioner did not request an instruction for involuntary manslaughter, only voluntary manslaughter. Voluntary manslaughter differs from murder in that the element of "malice" is negated by proof of a contemporaneous provocation, leading to a sudden heat of passion in the defendant. Here, too much time passed between the initial encounter—the purported provocation—and the shooting. Consequently, the initial fight between Perkins and Petitioner cannot constitute the provocation that would negate the element of malice and lead a rational jury to conclude that Petitioner was acting in a sudden heat of passion when he fired a shot at the van. As a result, even if Petitioner's state law claim could be considered, it would not justify a new trial. *See also Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002) (failure to properly apply state law not a basis for federal habeas relief).

not "such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Scott*, 302 F.3d at 606 (citing *Bagby*, 894 F.2d at 797).

The state court decision on Petitioner's final habeas claim is not contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. Therefore, Petitioner is not entitled to habeas relief on this claim.

## IV

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U .S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full

merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336–37.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave

to proceed in forma pauperis on appeal, as any appeal would be frivolous. *See* Fed.R.App. P. 24(a).

<p style="text-align:center"><strong>V</strong></p>

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition. Because the Court is denying Petitioner's habeas petition, his motion objecting to Respondent's answer is moot.

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus [Dkt # 1] is **DENIED**.

It is further **ORDERED** that Petitioner's "Motion to Object to Respondent's Answer to Petition for Writ of Habeas Corpus" [Dkt. # 12] is **DENIED AS MOOT**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that permission to proceed in forma pauperis on appeal is **DENIED**.


s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: March 15, 2010

<div style="border:1px solid #000; padding:10px">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 15, 2010.

s/Tracy A. Jacobs
TRACY A. JACOBS

</div>